UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MARTINEZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL EWP, Inc., et al., <br><br> Defendants. | Case No.: 23-cv-837-RSH-LR <br><br> **ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT** <br><br> [ECF No. 42] |

Before the Court is Plaintiffs' unopposed motion for preliminary approval of class settlement. ECF No. 42. For the deficiencies identified below, the Court denies Plaintiffs' motion.

**I.   BACKGROUND**

   **A.   The Parties**

Plaintiffs Michael Martinez and Juan Sanchez were formerly employed by National EWP, Inc., which owns drilling and well services throughout California, Arizona, Nevada, and Utah. *See* ECF No. 1 ¶ 26. Plaintiffs allege that during their employment they were not provided meal and rest breaks and minimum and overtime wages, did not receive accurate itemized wage statements, were not paid timely, and were wrongly terminated. *Id.* ¶ 28.

### B. Procedural History

On March 10, 2023, Plaintiffs filed a putative class action in California Superior Court against defendants National EWP, Inc., Simon Johnson, Kevin Simpson, and Does 1 through 20. ECF No. 1 at 8-24. Defendants subsequently removed the case to federal court. *Id.* at 1-7. Plaintiff's Complaint alleges ten claims: (1) failure to pay minimum wages in violation of California Labor Code §§ 1194, 1194.2, 1197 and Wage Order No. 5; (2) failure to furnish wage and hour statements in violation of California Labor Code §§ 226 and 226.3; (3) failure to maintain payroll records in violation of California Labor Code §§ 1174 and 1174.5; (4) failure to provide meal and rest period compensation in violation of California Labor Code § 226.7; (5) failure to pay wages in a timely manner in violation of California Labor Code § 204; (6) failure to pay overtime compensation in violation of California Labor Code §§ 512 and 1194; (7) waiting time penalties in violation of California Labor Code §§ 201, 202, and 203; (8) failure to indemnify/reimburse necessary expenditures in violation of California Labor Code § 2802; (9) violation of California's Business & Professions Code § 17200, *et seq.*; and (10) civil penalties under California's Private Attorney General Act ("PAGA").

On September 6, 2023, the Parties participated in an Early Neutral Evaluation conference before the Hon. Lupe Rodriguez, Jr. ECF No. 21. On September 28, the Parties attended a settlement conference before Judge Rodriguez. ECF No. 23. During this time, the Parties also conducted initial disclosures and informal discovery regarding the claims. *See* ECF No. 42-1 ¶ 8.

On December 8, 2023, Plaintiffs filed an unopposed motion for preliminary approval of class action settlement. ECF No. 27. The Court denied this motion, explaining that it "fail[ed] to address or apply the correct legal standards as to the procedures applicable under Rule 23; as to class certification; or as to the fairness, reasonableness, and adequacy of the proposed settlement;" and as to the PAGA settlement. ECF No. 30. On March 1, 2024, Plaintiff filed an amended motion for preliminary approval. ECF No. 31. After a

hearing on the amended motion, the Court denied the motion on similar grounds. ECF No. 38. The Court now considers Plaintiff's second amended motion for preliminary approval of class settlement. ECF No. 42.

### C. Terms of the Settlement Agreement

#### 1. Proposed Class

The Settlement Agreement defines the class to include 236 class members who worked a total of approximately 3,654 workweeks from March 10, 2019 until December 28, 2023. ECF No. 42-1 ¶ 15. It further identifies 63 aggrieved employees who worked approximately 1,638 pay periods during the PAGA statutory period. ECF Nos. 42 at 21; 42-1 ¶ 27. The settlement does not identify the PAGA statutory period.

#### 2. Settlement Amount

Defendants have agreed to pay a non-reversionary gross settlement amount of $82,500.00.[1] ECF No. 42-1 ¶¶ 20, 50(k). From this, the following deductions will be made: $20,625 in Plaintiffs' attorney fees; $1,982.72 in attorney costs; $10,000 for settlement administration costs to be paid to CPT Group, Inc.; $8,250 in PAGA penalties—$2,062.50 of which will be paid to aggrieved employees; and a $500 service payment to the class representatives. ECF Nos. 42 at 6; 42-1 ¶ 50.

The remaining net settlement of $41,142.28 will be disbursed to class members. The individual class settlement payments will be automatically paid to class members who do not opt out based on their pro rata share of weeks worked during the class period. ECF Nos. 42 at 6-7; 42-2 ¶ 50. The Settlement Administrator will distribute individual payments by dividing the total weeks worked by class members into the net settlement amount to

---

[1]   This settlement amount is based on the Parties' estimate that the 236 Class Members worked 3,654 workweeks. The settlement includes an "Escalator Clause," which provides that if the number of workweeks has been undercounted by more than 10% (*i.e.*, the actual number of workweeks is above 4,019), then Defendants shall increase the Settlement Amount proportionally by $22.58 for each workweek above 4,019. ECF No. 42-1 ¶ 15.

calculate an amount each class member will be paid per week. *Id*. If there are timely requests for exclusion, the settlement administrator will increase the class payments so that 100% of the net settlement is distributed. *Id*. For individual class payments, 15% will be allocated as wages subject to tax withholding and 85% will be allocated for interest and statutory penalties from which no taxes will be withheld. ECF No. 42-2 ¶ 50(d). No portion of the Settlement amount will revert to Defendants. *Id.* ¶ 50(k). The Settlement Administrator will mail the Notice Packet, review and verify opt-out requests, issue tax forms, check class members' addresses, and mail settlement checks. ECF No. 40 at 25.

### 3. Release

The Notice Packet will include a request for exclusion form, objection form, and dispute form, which will allow individuals to opt out of the Class. ECF No. 42-2 ¶¶ 62-63, 67. The Settlement provides that members of the Class agree to "forever completely release and discharge" Defendants from the class claims during the class period. ECF No. 42-2 ¶ 51. The Class members further "acknowledge and agree that the claims for unpaid wages and untimely payment of wages in the Action are disputed, and that the payments set forth herein constitute payment of all sums allegedly due to them" and acknowledge that California Labor Code § 206.5 is not applicable to the Parties or the Settlement. *Id.* ¶ 53.

The Settlement also releases Defendants from the PAGA claims during the PAGA period and provides that "neither Plaintiffs nor any Aggrieved Employee shall have the right to opt-out or otherwise exclude themselves from releasing the PAGA Released Claims." *Id.* ¶ 55.

## II. DEFICIENCIES IN PLAINTIFFS' MOTION

### A. Class Certification for Settlement Purposes

To approve the settlement, the Court must "reach a tentative conclusion that it will be able to certify the class in conjunction with final approval of the settlement." *Lusk v. Five Guys Enterprises LLC*, No. 1:17-cv-00762-AWI-EPG, 2019 WL 7048791, at *5 (E.D. Cal. Dec. 23, 2019) (citing Newberg on Class Actions § 13:18 (5th ed.)). A class can only

be certified if it meets the requirements of Rule 23(a) and one of the three categories of Rule 23(b). *Grady v. RCM Techs., Inc.*, 671 F. Supp. 3d 1065, 1072 (C.D. Cal. 2023). Rule 23(a) is satisfied only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Plaintiffs seek class certification under Rule 23(b)(3), which further requires "the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The party seeking class certification bears the burden of demonstrating that Rule 23 is met. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.) (opinion amended on denial of reh'g, 273 F.3d 1266 (9th Cir. 2001)). The Court must give "undiluted, even heightened, attention in the settlement context" to ensure Rule 23's requirements are met. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

While Plaintiffs have improved their analysis of Rule 23 relative to their most recent prior motion, their current motion only addresses three of Rule 23(a)'s four requirements. It makes arguments as to numerosity, commonality, and adequacy, but fails to address typicality. The single mention of typicality appears in the conclusory statement that "Plaintiffs' claims are typical of Settlement Class Members' claims," *see* ECF No. 42 at 17, which does not constitute legal analysis. The Court concludes that, particularly in light of its previous rulings directing Plaintiffs to "address" and "apply the correct legal

standards as to the procedures applicable under Rule 23[] as to class certification," *see* ECF No. 30, the Court will not address typicality absent any analysis by the Parties. Plaintiffs fail to meet their burden of demonstrating that certification of the settlement class is appropriate. *See Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1308 (9th Cir. 1977) ("The burden of demonstrating that the elements of section (a) are satisfied is on the party seeking to have a class certified."); *see also Abikar v. Bristol Bay Native Corp.*, No. 317CV01036GPCAGS, 2018 WL 6738017, at *3 (S.D. Cal. Dec. 21, 2018) (explaining plaintiff "seeking class certification bears the burden of demonstrating that each element of Rule 23 is satisfied, and a district court may certify a class only if it determines that the plaintiff has met its burden"); *see also Sherman v. CLP Res., Inc.*, No. CV 12-11037-GW(PLAX), 2019 WL 13026726, at *6 (C.D. Cal. Dec. 19, 2019) (concluding plaintiffs failed to demonstrate certification of settlement class warranted because "without some actual discussion of predominance and superiority, particularly in the context of Rule 23(b)(3), the Court cannot assess those two factors"). Accordingly, Plaintiffs have not met their burden, and the Court denies Plaintiffs' motion to certify the class for settlement purposes.

### B.  Proposed Class Action Settlement

There are also several aspects of the Settlement that preclude preliminary approval of the settlement as "fair, reasonable, and adequate" under Rule 23(e)(2). In requesting preliminary approval of a class settlement, "the parties must provide sufficient information for the court to determine that it 'will likely be able to' grant final approval of the settlement under Rule 23(e)(2)." *Lusk v. Five Guys Enterprises LLC*, No. 1:17-cv-00762-AWI-EPG, 2021 WL 2210724, at *2 (E.D. Cal. June 1, 2021). At the preliminary approval stage, the Court must evaluate whether the settlement "falls within the range of possible approval." *Rivera v. Marriott Int'l, Inc.*, No 2:19-cv-05050-ODW (KSx), 2023 WL 3766504, at *6 (C.D. Cal. June 1, 2023). "[T]here is a strong judicial policy that favors settlements,

particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

Pursuant to the 2018 amendments, the Court considers the following factors in determining whether a class settlement is fair, reasonable, and adequate:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[2]

Where, as here, the settlement approval occurs before formal class certification, the Court applies "a higher standard of fairness." *Hanlon*, 150 F.3d at 1026. Preliminary approval of a settlement is appropriate if (1) if appears to be the product of "serious, informed, and non-collusive negotiations"; (2) "has no obvious deficiencies"; (3) "does not improperly grant preferential treatment to class representatives or segments of the class"; and (4) "falls within the range of possible approval." *Id.* (quoting *In re Tableware Antitrust*

---

[2] Although the Ninth Circuit is guided by a series of eight factors in examining whether a proposed settlement comports with Rule 23(e)(2), *see Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021), the "revised Rule 23 directs the parties to present [their] settlement to the court in terms of [this new] shorter list of core concerns." *In re Kia Hyundai Vehicle Theft Litig.*, 2023 WL 8126851, at *12 (quotations omitted) (citing Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes).

*Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). In evaluating the adequacy of a settlement, the Court compares the amount offered with the maximum potential recovery. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), as amended (June 19, 2000).

Plaintiffs' motion fails to justify the adequacy of the proposed settlement of $82,500. Plaintiffs' motion and attached declaration state that upon "a careful examination of Plaintiffs' personnel files and associated records" and review of preliminary discovery documents including "employment records of Plaintiffs and other Class Members, a detailed sampling of Class Members' and Plaintiffs' time and pay data, [and] Defendants' employee handbooks," they learned that Defendants complied with California law "to a significant degree." ECF No. 42-1 ¶ 8; ECF No. 42 at 2. The motion states that there are 236 class members who worked for a total of 3,654 weeks during the class period. ECF No. 42-1 ¶ 14. It then provides the following charts calculating Defendants' maximum and likely exposure:

| Individuals | 10-20 (12) | |
|---|---|---|
| Blended Hourly Rate | $ 19.00 | Assumptions |
| Meal Breaks | $ 94,848.00 | (2X per week, for four years) |
| Rest Periods | $ 94,848.00 | (2X per week, for four years) |
| Overtime | $ 17,784.00 | (0.25 hours per week, for four years) |
| Paystubs | $ 48,000.00 | (Assuming $4000 violation for all) |
| Total | $ 255,480.00 | |

| Likely Exposure | |
|---|---|
| Individuals | 10-20 (12) |
| Blended Hourly Rate | $19.00 |
| Meal Breaks | $18,969.60 |
| Rest Periods | $18,969.60 |
| Overtime | $3,556.80 |
| Paystubs | $48,000.00 |
| Total | $89,496.00 |

ECF No. 42 at 3. Plaintiffs state that the settlement amount of $82,500 is nearly equivalent to the "likely exposure" of $89,496 and constitutes 33% of the maximum recovery of $255,480, which they argue is a reasonable recovery given the risks of litigation. *Id.*

Plaintiffs fail to sufficiently explain these calculations. First, all of Plaintiffs' calculations rely on a "blended hourly rate" of $19. Plaintiffs do not explain how they reached this number or justify why it represents an accurate average hourly rate across the 3,654 weeks worked by class members who were paid at different rates and worked for different numbers of weeks. Second, Plaintiffs do not explain why they assume there were 12 workers a week, when their motion acknowledges that the average number of workers per week when dividing the total weeks by the number of class members is between 17 and 18. *See* ECF No. 42 at 3. Further, Plaintiffs do not explain why calculating an average number of weekly workers is necessary when they could instead multiply the number of violations by the number of weeks worked to reach an exposure amount for each category of violation.[3] Third, to calculate the maximum penalty for failing to provide accurate paystubs, Plaintiffs' chart states "Assuming $4,000 violation for all" without explanation of that per-violation amount or the total amount of $48,000. Fourth, while the chart provides some bare information about the assumptions used in calculating the maximum exposure, Plaintiffs' "Likely Exposure" chart does not include any explanation of the totals listed or the underlying assumptions.

---

[3]   For example, Plaintiffs estimate a maximum exposure of $94,848 for meal period violations, which they appear to reach as follows: (2 violations per week) x (208 weeks during the class period) x (twelve weekly workers) x ($19 blended hourly rate). Plaintiffs do not explain why multiplying (2 violations per week) x (3,654 weeks worked) x ($19 blended hourly rate) for a higher total maximum recovery is not a more accurate estimate. If these calculations were implemented throughout, the proposed settlement would represent a significantly smaller percentage of the maximum potential recovery.

Without further explanation of these calculations, the Court cannot compare the proposed settlement amount to the maximum potential recovery to determine the adequacy of the award.

### C.  PAGA Settlement

The Settlement designates $8,250 to the PAGA claim, 75% of which ($6,187.50) would be paid to the LWDA and 25% of which ($2,062.50) would be paid to aggrieved employees. ECF No. 42 at 21. Plaintiffs state that "[B]ased on information and evidence produced by Defendant during discovery, Plaintiffs' Counsel determined that approximately 63 aggrieved employees worked a combined total of approximately 1,638 pay periods during the PAGA statute of limitations period." *Id.*

A plaintiff bringing a PAGA claim "does so as a proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Ct.*, 46 Cal. 4th 969, 986 (2009). A judgment in a private employment action therefore "binds not only that employee but also the state labor law enforcement agencies." *Id*. When a PAGA claim is settled, courts are tasked with determining whether the relief provided is "genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (quotations omitted). California Labor Code Section 2699(f) sets forth the formula to calculate civil PAGA penalties: $100 is assessed for each aggrieved employee per pay period for the initial violation and $200 is assessed for each aggrieved employee per pay period for each subsequent violation. Cal. Lab. Code § 2699(f). Typically, 75% of these penalties will be distributed to the LWDA and 25% to aggrieved employees. Cal. Lab. Code § 2699(i). Although PAGA does not establish a standard for evaluating PAGA settlements, courts generally evaluate PAGA settlements "in the light of the PAGA requirement that the award not be 'unjust, arbitrary and oppressive, or confiscatory.'" *Rincon v. W. Coast Tomato Growers, LLC*, No. 13-CV-2473-JLS-KSC, 2018 WL 828104, at *2 (S.D. Cal. Feb. 12, 2018) (quoting Cal. Labor Code § 2699(e)(2)).

Plaintiffs' motion does not explain why the PAGA settlement award is reasonable, for example, by calculating the percentage the settlement represents of any maximum PAGA penalty. It appears that the PAGA Period is significantly shorter than the Class Period, but neither Plaintiffs' motion nor the Settlement specify these dates. Plaintiffs' motion thus does not allow the Court to conclude that proper consideration has been given to the PAGA claims and the vindication of aggrieved employees' rights. *See O'Connor*, 201 F. Supp. 3d at 1134 ("The Court must be cognizant of the risk that . . . the rights of individuals who may not even be members of the class and the public may be waived for little additional consideration in order to induce the employer to agree to a settlement with the class."). Without further information, the Court cannot assess whether the PAGA settlement sum is fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals. *See Aronson v. Gannett Publ'g Servs., LLC*, No. EDCV19996PSGJEMX, 2022 WL 2285658, at *5 (C.D. Cal. June 13, 2022) ("[W]ithout more information, the Court cannot accurately determine whether the PAGA settlement is fair and adequate in view of the purpose and policies of the statute.").

### III. CONCLUSION

For the above reasons, the Court **DENIES** Plaintiffs' second amended motion for preliminary approval of class action settlement.

**IT IS SO ORDERED.**

Dated: June 18, 2024

_____
Hon. Robert S. Huie
United States District Judge